IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY ADONIS MURPHY,

    Petitioner,

vs.

KATHY ALLISION, Warden, California
State Prison, Corcoran,

    Respondent.

No. 2:11-cv-01578-JKS

MEMORANDUM DECISION

Gregory Adonis Murphy, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Murphy is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Corcoran. Respondent has answered, and Murphy has replied. Murphy has also requested an evidentiary hearing.

I. BACKGROUND/PRIOR PROCEEDINGS

In May 2008 a Sacramento County Superior Court jury found Murphy guilty of assault with a deadly weapon by means of force likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)), first-degree burglary (Cal. Penal Code § 459), and attempted first-degree robbery (Cal. Penal Code §§ 644/211). The jury also found true allegations that in the commission of these crimes, Murphy inflicted great bodily injury on his victim. With regard to the convictions for burglary and attempted robbery, the jury also found true that Murphy used a dangerous or deadly weapon. Murphy admitted a prior strike conviction, and the trial court found true

allegations that defendant had previously been convicted of seven felonies and served a prior prison term.  In June 2008 the trial court sentenced Murphy to an aggregate term of twenty-four years in state prison.  The California Court of Appeal, Third Appellate District, affirmed Murphy's conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied review on August 19, 2009.  On June 13, 2010, Murphy filed a petition for habeas relief in the Sacramento County Superior Court, which was denied in a reasoned opinion on August 12, 2010.  The California Court of Appeal, Third Appellate District, summarily denied Murphy's petition for habeas relief without opinion or citation to authority on September 16, 2010, and the California Supreme Court likewise summarily denied Murphy's habeas petition on May 18, 2011.  Murphy timely filed his Petition for relief in this Court on May 22, 2011.

Because they are not relevant to the issues presented in the Petition, the facts underlying Murphy's conviction are not recited here.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Murphy raises seven grounds:[2]  (1) ineffective assistance of trial counsel; (2) that he was denied due process in that he was shackled in view of the jury pool and the trial court impermissibly commented on the fact that he was denied bail; (3) denial of the right to present a complete defense; (4) that the prosecution knowingly used perjured testimony; (5) cumulative effect of trial errors; (6) that the trial court incorrectly denied his motion for a new

---

[1] *People v. Murphy*, No. C059153, 2009 WL 1654571 (Cal. Ct. App. Jun. 12, 2009).

[2] The body of the Petition filed in this Court containing Murphy's grounds (pages 27-44) is identical to the habeas petitions filed in the California courts.

trial; and (7) that the imposition of the maximum sentence violated *Blakely*/*Cunningham*,[3] and was disproportionately harsh.  Respondent contends that Murphy procedurally defaulted on his second, third, fourth, and seventh grounds.  Respondent raises no other affirmative defense.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

---

[3] *Blakely v. Washington*, 542 U.S. 296 (2005); *Cunningham v. California*, 549 U.S. 270 (2007).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-*
(continued...)

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

---

[7](...continued)
*Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[14] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[15] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[16]

---

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

IV.  DISCUSSION

**A.      Evidentiary Hearing**

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state-court proceeding has not developed the relevant facts after a full hearing.[17]  In this case, Murphy did not request an evidentiary hearing in the state court habeas proceedings.  Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claims.[18]  Nor does it appear from the record that the California courts made any independent evidentiary findings in the state court habeas proceeding, and review in this case is based upon the state-court record.  Murphy has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve.  The request for an evidentiary hearing is, therefore, **DENIED**.

**B.      Procedural Bar**

Murphy raised his second (shackling and bail comment), third (denial of right to present a complete defense), fourth (use of perjured testimony), and seventh (Eighth Amendment) claims in his petition for habeas relief in the California courts.  The Sacramento County Superior Court denied relief on each of those grounds because they could have been raised on appeal citing *In re Harris* (1993) 5 Cal.4th 813, 828 [855 P.2d 391, 396] and *Ex parte Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513, 514].  Respondent argues that, because the Sacramento County Superior

---

[17] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[18] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

Court denied Murphy's second, third, fourth and seventh grounds in his state habeas petition

citing *Harris* and *Dixon*, those claims are procedurally barred.  As discussed further below, this

Court agrees, except as to the seventh ground in part.

Federal courts "will not review a question of federal law decided by a state court if the

decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment."[19]  This Court may not reach the merits of procedurally

defaulted claims, that is, claims "in which the petitioner failed to follow applicable state

procedural rules in raising the claims . . . ."[20]  "The state-law claim may be a substantive rule

dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."[21]

Procedural default does not preclude federal habeas review unless the last state court rendering

judgment in a case, clearly and expressly states that its judgment rests on a state procedural bar.[22]

"[I]n order to constitute adequate and independent grounds sufficient to support a finding of

procedural default, a state rule must be clear, consistently applied, and well established at the

time of the petitioner's purported default."[23]  A discretionary state procedural rule can be firmly

---

[19] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[20] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[21] *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).

[22] *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)).

[23] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

established and regularly followed, so as to bar federal habeas review, even if the appropriate

exercise of discretion may permit consideration of a federal claim in some cases but not others.[24]

It is firmly established under California law that "habeas corpus will not lie as a substitute

for appeal . . . nor as a second appeal."[25]  Contentions that could have been raised during direct

appeal, but were not, generally cannot be renewed in a habeas petition.[26]  In *Robbins*, the

California Supreme Court made clear that after the date of that decision, August 3, 1998, except

where the petitioner was convicted or sentenced under an invalid statute, it would no longer

consider federal law when reviewing state habeas claims for an exception to the state procedural

default in *Clark*, *Dixon*, and *Harris*.[27]  Thus, this Court agrees that Murphy's second, third, fourth

grounds, and, in part, his seventh ground, are procedurally barred.[28]

The Court agrees with Respondent that, because Murphy's claims were defaulted in state

court on an adequate and independent state ground, they will not be considered in federal habeas

proceedings unless Murphy can demonstrate cause for the default and actual prejudice, i.e., a

miscarriage of justice.[29]  To prove a fundamental miscarriage of justice, Murphy must show that

---

[24]  *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011); *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009).

[25]  *In re Harris*, 855 P.2d 391, 396 (Cal. 1993) (citing *In re Foss*, 519 P.2d 1073 (Cal. 1974); *In re Terry*, 484 P.2d 1375 (Cal. 1971); *In re Waltreus*, 397 P.2d 1001 (Cal. 1965); *In re Spears*, 204 Cal. Rptr. 333 (Ct. App. 1984); *In re Wagner*, 173 Cal. Rptr. 766 (Cal. App. 1981)).

[26]  *Ex parte Dixon*, 264 P.2d 513, 514 (Cal. 1953).

[27]  *In re Robbins*, 959 P.2d 311, 338-40 (Cal. 1998).

[28]  *Bennett v. Mueller*, 322 F.3d 573, 581-82 (9th Cir. 2003).

[29]  *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

a constitutional violation probably resulted in his conviction despite his actual innocence.[30]

Although at the gateway stage the petitioner need not establish his innocence as an "absolute

certainty," Murphy must demonstrate that more likely than not, no reasonable juror could find

him guilty beyond a reasonable doubt.[31]

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S. Ct. 2546; *Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S. Ct. 2514, 120 L.Ed.2d 269 (1992). An objective factor outside of a petitioner's control (e.g., ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L.Ed.2d 517 (1991). The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982)). A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer,* 505 U.S. at 339, 112 S. Ct. 2514 (quotation marks omitted).[32]

Although Murphy discusses the procedural default defenses in his traverse, he does not

make even a rudimentary attempt to show cause, i.e., some factor beyond his control prevented

him from presenting his claim. To the extent that Murphy has attempted to show prejudice, his

efforts fail.

---

[30] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[31] *House v. Bell*, 547 U.S. 518, 538 (2006).

[32] *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

Ground 2:  Shackling/Comment on Bail

In rejecting Murphy's argument, in addition to denying Murphy's claim on procedural

grounds, the Sacramento County Superior Court held:

> [Murphy] argues in conclusory fashion that he was denied due process because he appeared before the jury pool in shackles, and the court made a "false" remark to the jury pool about [Murphy] failing to make bail.  [Murphy] contends that these circumstances prejudiced potential jurors.
>
> Penal Code section 688 provides that a defendant may not be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge.  (Pen. Code § 688.)  "A defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints."  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1050 (citing *People v. Duran* (1976) 16 Cal.3d 282).)  However, even if a trial court abused its discretion in allowing a defendant to appear in shackles in the courtroom before a jury, a defendant must still show that he suffered prejudice. (*Id.*)
>
> Assuming [Murphy] was restrained in front of the jury pool as [Murphy] alleges, he points to no evidence in the record that he suffered any adverse effects from the combined effect of such restraint and the court's remark about him not making bail.  Similarly, even if [Murphy] had made bail, as he contends, [Murphy] has not shown that he was prejudiced by the court's remarks, as the court expressly admonished the jury not to consider his custody, and noted that it only mentioned this fact because [Murphy's] custody could cause some delays in the proceedings.
>
> For purposes of this habeas corpus petition, this claim is denied because it should have been raised on appeal.  (*In re Harris, supra*, 5 Cal.4th 813, 8828, *In re Dixon, supra*, 41 Cal.2d 756, 759.)  Additionally, [Murphy] has not pleaded facts to indicate that the alleged error is "a clear and fundamental constitutional error that strikes at the heart of the trial process," and the claim does not fall within any of the exceptions to the *Dixon* bar.  (*In re Harris*, 5 Cal.4th at 834, 836, 838-39, 841.)[33]

Murphy presents the same arguments before this Court.  Not only is Murphy procedurally

barred from raising this issue, but he fails to point to anywhere in the record where it indicates

that the jury pool viewed Murphy in shackles.  Nor, does he point to anything in the record that

supports his implicit contention that he was, in fact, out on bail.  But, perhaps more telling, as the

---

[33] Lodged Doc. 7, Decision at 4.

Sacramento Superior Court noted, Murphy has not even asserted any prejudice as a result of these alleged transgressions.  Given that this Court will not presume error on the part of the state courts and that Murphy has the burden of proof by a preponderance of the evidence that a constitutional error occurred, not only is Murphy's second ground procedurally barred, but he is not entitled to relief on the merits in any event.

Ground 3:  Denial of Right to Present a Defense

Prior to trial, the trial court ruled that, with respect to Murphy's parole officer, she would be permitted to testify as to a telephone call from Murphy on the night of the crime that was preserved on her answering machine, limited to the fact that he sounded hysterical for the limited purpose of showing his state of mind, but not as to the content of the message.  The parole officer would not, however, be permitted to testify as to how well Murphy was doing on parole, as that testimony was not relevant.[34]  An investigating police officer was called as a witness by the defense.  During direct examination, defense counsel asked the officer if he had spoken to Murphy that evening, to which an objection was made on the grounds of hearsay and sustained.[35] The Defense then rested.

Murphy argues that, without the parole officer's testimony, which gave the jury a look into his behavior while on parole, the prosecution was somehow permitted to infer his guilt by standing on his right not to testify.  Murphy further argues that the refusal of the trial court to permit the investigating officer to testify that the officer had talked to Murphy that night coupled with the failure of defense counsel to introduce into evidence the police report showing that

---

[34] Reporter's Transcript at 12-13.

[35] Reporter's Transcript at 241.

contact could have possibly exonerated him by showing that he was voluntarily in touch with the police that night.  The flaw in Murphy's argument is that, although it might have had some relevance to Murphy's character, nothing in the excluded evidence even remotely touches upon a fact relevant to the issues of the case, i.e., whether or not Murphy assaulted the victim.  Because the evidence was not relevant to any contested, material issue in the case, their exclusion could hardly have been prejudicial or, conversely, their inclusion could not have established factual innocence.  Murphy is not entitled to relief under his third ground.

Ground 4:  Use of Perjured Testimony

Pointing to alleged inconsistencies between various statements the victim made before trial and at trial, Murphy contends that the prosecution knowingly used false testimony.  Even if this Court were to overlook the procedural default, Murphy would not prevail.  "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[36]  The essential elements of prosecutorial misconduct are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material.[37]  Here, all Murphy can point to are inconsistencies between statements before trial and during trial.  This,

---

[36] *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[37] *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

standing alone, is simply insufficient to establish that the prosecutor knowingly used false or perjured testimony.[38]   Murphy is not entitled to relief under his fourth ground.

Ground 7:  *Blakely-Cunningham* Violation/Disproportionate Sentence

Murphy contends that he was sentenced to the upper term based upon facts not found to be true by the jury and that his sentence was disproportionate to other sentences for the same or similar conduct.  In rejecting Murphy's argument, the Sacramento County Superior Court held:

> [Murphy] claims that the trial court increased his sentence on the basis of facts found by the trial judge and not the jury, and this sentence was "disproportionate to other sentences for the same conduct."
>
> In response to *Cunningham v. California* (2007) 549 U.S. 270, the Legislature amended Penal Code section 1170(b), which requires a court to use its discretion in selecting "one of three authorized terms" for an offense and set forth its reasons for imposing the selected term. (Pen. Code § 1170(b).)  A judge may use a fact admitted by the defendant to elevate a sentence above the statutory maximum authorized by a jury's verdict.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 836.)  The right to a jury trial and proof beyond a reasonable doubt does not apply to the "aggravating fact of a prior conviction" or to the aggravating fact of a defendant being on parole at the time of the offense.  (*Id*. at 836-37; *People v. Towne* (2008) 44 Cal.4th 63, 75, 79.)  All sentence enhancements must be specifically alleged, and proved or admitted. (Pen Code § 1170.1(e).)
>
> The court sentenced [Murphy] to the upper term of six years for the burglary charge and doubled that term to **twelve years**, because of [Murphy's] prior strike, to which he pleaded.  The court also stated its reasons on the record for imposing the upper term, including the fact that [Murphy] was on parole when he committed the offense, and the fact of [Murphy's] prior convictions for which no additional terms were imposed.  The court also sentenced [Murphy] to an additional **one year** because he used a deadly weapon and an additional **three years** because he inflicted great bodily injury on the victim, facts which the jury found to be true.  Lastly, the court sentenced [Murphy] to additional prison time for his numerous prior convictions, which the court found to be true in a separate bifurcated proceeding: **five years, one**

---

[38] *See United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) (refusing to reverse where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies"); *United States v. Wolf*, 813 F.2d 970, 976-77 (9th Cir. 1987) (discrepancies in witness testimony, subject to cross-examination, did not constitute grounds for reversal).

> **year** and **two years,** respectively.  Thus, [Murphy] received an aggregate sentence of **twenty-four** years.
>
> The court's sentence was proper and [Murphy] has not pleaded any facts to bring this claim within the exceptions to the *Dixon* bar.  Similarly, [Murphy's] conclusory allegation that his sentence is disproportionate should also have been raised on appeal.  (*In re Harris*, *supra*, 5 Cal.4th at 834, 836, 838-39; *In re Dixon*, *supra*, 41 Cal.2d at 759.).[39]

Respondent argues that this ground is procedurally barred.  This Court disagrees in part. This Court's reading of the decision of the Sacramento County Superior Court indicates that, at most, that court *clearly* applied the *Harris-Dixon* bar to the disproportionate sentence claim, not his *Blakely-Cunningham* claim.  Thus, while Murphy's disproportionate sentence claim is procedurally barred, his *Blakely-Cunningham* claim is not.  Murphy, however, is nevertheless not entitled to relief on the merits of either of those claims.

Although Murphy may have received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."[40]  Balanced against the proportionality principle is the corollary principle that the determination of prison sentences are a legislative prerogative not within the province of the courts.[41]  The Ninth Circuit has held that "'only extreme sentences that are grossly

---

[39] Lodged Doc. 7, Decision at 5-6 (bold print in the original).

[40] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[41] *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980).

disproportionate to the crime' violate the Eighth Amendment."[42]   As the Ninth Circuit has

observed:

> [T]he Supreme Court has noted that proportionality analysis under the Eighth Amendment should be guided by objective criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  *Solem v. Helm,* 463 U.S. 277, 292, 103 S. Ct. 3001, 77 L.Ed.2d 637 (1983).  Despite this, the Supreme Court has not uniformly applied this three step analysis.  *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L.Ed.2d 836 (1991); *Rummel v. Estelle,* 445 U.S. 263, 285, 100 S. Ct. 1133, 63 L.Ed.2d 382 (1980).
>
> In an attempt to resolve this inconsistency, the Supreme Court has explicitly identified that which constitutes "clearly established federal law" in its Eighth Amendment jurisprudence for the purpose of habeas review.  Specifically, in *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003), after conceding that its "precedents in this area have not been a model of clarity," the Court held that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1):  A gross disproportionality principle is applicable to sentences for terms of years."  *Lockyer,* 538 U.S. at 72, 123 S. Ct. 1166.  In so holding, the Court made no mention of any constitutional imperative requiring that courts make the various intra- and inter-jurisdictional comparisons recommended by the *Solem* court. *See id.*  Instead, the Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.* at 73, 123 S. Ct. 1166.[43]

In *Cunningham*, the Supreme Court did not invalidate upper-term sentences imposed as a

result of prior convictions.[44]  Under *Black II*, the existence of only one aggravating factor that

satisfies the Sixth Amendment, i.e., has been found to exist by a jury, admitted by the defendant,

or is justified based upon the defendant's record of prior convictions, is necessary to set the upper

---

[42]  *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992)).

[43]  *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 438-39 (9th Cir. 2007).

[44]  *Cunningham*, 549 U.S. at 288-89.

term as the maximum sentence.[45]  This is consistent with the Sixth Amendment requirement

embodied in *Apprendi*[46] and its progeny.[47]  The Sixth Amendment does not preclude the

imposition of consecutive sentences based upon the findings of fact by a judge rather than a

jury.[48]

Based upon the record, this Court cannot find that the decision of the Sacramento County

Superior Court was "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" at the time the state court

rendered its decision or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."[49]  Even if not procedurally barred, Murphy is

not entitled to relief under his seventh ground on either basis he asserts.

**C.    Merits**

Ground 1:  Ineffective Assistance of Trial Counsel

Murphy presents a veritable laundry list of errors he contends were made by trial counsel,

including counsel's failure to either investigate or present certain evidence, including: (1) a

statement from his parole agent; (2) statements from two neighbors about their interactions with

the victim; (3) information from a police report authored by an officer who testified at trial that

"would have introduced into evidence and to the jury petitioner's statements, phone

conversations, and overall demeanor on the night in question . . ."; (4) testimony of "all of the

---

[45] *People v. Black*, 161 P.3d 1130, 1140-41 (Cal. 2007).

[46] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[47] *See Butler v. Curry*, 528 F.3d 624, 643 (9th Cir. 2008).

[48] *Oregon v. Ice*, 555 U.S. 160, 168-69 (2009).

[49] 28 U.S.C. § 2254(d).

sheriff's deputies on [the] defense witness['s] list"; and (5) the fact that he was not thoroughly examined for blood after the incident.[50]   The Sacramento County Superior Court rejected Murphy's arguments:

### a. Ineffective Assistance of Counsel

For [Murphy] to show ineffective assistance of counsel, he must first "show counsel's performance was 'deficient' because his or her 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms." (*In re Harris*, *supra*, 5 Cal.4th at 833 (citing *Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Pope* (1979) 23 Cal.3d 412).)  In evaluating the sufficiency of counsel's representation, courts must be highly deferential.  A petitioner claiming ineffective assistance of counsel must overcome a presumption that, considering all of the circumstances, counsel's actions "might be considered sound trial strategy." (*Strickland*, *supra*, 466 U.S. at 689.)  A failure to call certain witnesses in a criminal trial will usually be deemed "trial tactics as to which [reviewing courts] will not ordinarily exercise judicial hindsight."  (*People v. Beagle* (1972) 6 Cal.3d 441, 458 (superseded by statute on other grounds); *see also People v. Bolin* (1998) 18 Cal.4th 297, 334 (noting that a decision on whether to call certain witnesses is also a matter of trial tactics, unless the decision results from unreasonable failure to investigate).)

Second, a petitioner must also "show prejudice flowing from counsel's performance or lack thereof."  (*In re Harris*, *supra*, 5 Cal.4th at 833.)  Prejudice is shown where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* (citing *Strickland*, *supra*, 466 U.S. at 689).)

### i. Failure to investigate or present evidence

[Murphy] contends that his counsel was ineffective because he either did not investigate potential evidence or present certain evidence, including statements or testimony from other neighbors about their interactions with the victim, testimony of other unidentified sheriff's deputies, a statement from [Murphy's] parole officer, information from a police report of an officer who testified at trial, and the fact that [Murphy] was not examined for blood after the incident.  [Murphy] meets neither prong of the *Strickland* test with regard to his claims.  First, [Murphy] has not shown that counsel's decision not to use or pursue this potential evidence fell below an objective standard of reasonableness.  Rather, counsel's decision appears to be trial strategy, for counsel could have determined that other potential evidence, such as other neighbor's statements about the victim, was not credible, or would not have been admitted by the court.  Additionally, [Murphy] has shown no prejudice as a result of his counsel's decision, nor does he allege any facts that indicate a reasonable

---

[50] Petition at 27-28.

probability that presentation of this evidence would have changed the outcome of his trial. Finally, with respect to the testimony of his parole officer, his counsel did move to admit this testimony, which the court rejected in part, because it was irrelevant. Accordingly, [Murphy] has failed to show that this counsel was ineffective for failing to investigate or present the evidence listed in the petition.

### ii. Use of victim's criminal background for impeachment

[Murphy] claims that his trial counsel was ineffective because he failed to investigate the victim's criminal background, and use this as a basis to impeach the victim at trial. [Murphy] is mistaken. [Murphy's] counsel believed that the victim had prior felony convictions and moved to use those convictions as a basis for impeachment. However, the prosecution then alerted [Murphy's] counsel and the court that a search of the database for felony convictions revealed that these convictions were attached to another person with the same name, and [Murphy's] counsel did not seek to impeach the victim. Thus, [Murphy's] counsel was not ineffective in this regard.

### iii. [Murphy's] wife's refusal to testify

[Murphy] argues that his counsel should have objected to the trial court's "misrepresentation" of his then-wife, Heather being subpoenaed by the defense to testify. It is unclear what misrepresentation [Murphy] is referring to, however, this argument appears to be connected to [Murphy's] other claims that he received an unfair trial because Heather chose not to testify. First, neither the record nor the transcripts in [Murphy's] underlying case indicate that the trial court made any improper statements regarding Heather or her decision to testify. Additionally, Heather, who was represented by separate counsel at trial, chose to invoke her Fifth Amendment rights and not testify, based on the advice of *her* counsel. [Murphy] fails to allege any facts to show that his counsel was ineffective with regard to Heather's decision not to testify at trial.

### iv. Validity of identification of [Murphy]

[Murphy] contends that his counsel was ineffective for failing to challenge a "line up" to which he was subjected. He does not state any other facts describing the lineup. The record shows that officers responding to the incident subsequently located [Murphy] and brought him back to the victim's residence, where the victim identified [Murphy].

A defendant who claims that a pretrial identification is unnecessarily suggestive bears the burden of showing that the identification gave rise to a very substantial likelihood of irreparable misidentification. (*People v. Cowger* (1988) 202 Cal.App.3d 1066, 1073 (quotation omitted).) Whether a single-person showup identification is necessarily unfair must be assessed in the light of the totality of the circumstances in each case. (*Id.*) In determining the fairness of a single-person showup, courts consider the following factors: (1) the opportunity of the witness to observe the suspect at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the suspect, (4) the certainty shown by the witness at the confrontation, and (5) the length of time between the crime and the

confrontation.  (*Id.* (citing *Neil v. Biggers* (1972) 409 U.S. 188, 199).)  All of these factors were present here.

> The victim had ample time to observe [Murphy] closely during [Murphy's] initial visit to the apartment and when [Murphy] later burst in the apartment; the victim's degree of attention was high as he feared an (eventual) attack by [Murphy]; he described [Murphy] with accuracy and recognized him as one of his neighbors, he was certain of the identification; and finally, the identification was prompt—occurring shortly after the crime.  Thus, the victim's identification of [Murphy] was proper and did not violate [Murphy's] right to due process.  (*People v. Cowger*, *supra*, 202 Cal. App. 3d at 1073.)  [Murphy] has failed to show that his counsel was ineffective for failing to challenge this identification.[51]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Murphy must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[52]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[53]  Murphy must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[54]  The Supreme Court has explained that, if the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.[55]  An ineffective assistance of counsel claim

---

[51] Lodged Doc. 7, Decision at 1-3.

[52] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[53] *Id*.

[54] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[55] *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393.

should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[56]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[57]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[58]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[59]

Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it

---

[56] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[57] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[58] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[59] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

must ask whether it is possible fairminded jurists could disagree that those arguments
or theories are inconsistent with the holding in a prior decision of this Court.[60]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it
is "by no means insurmountable," but nonetheless remains "highly demanding."[61] "*Strickland*
does not guarantee perfect representation, only a reasonably competent attorney."[62] "Only those
habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the
gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[63]

Murphy bears the burden of proving that counsel's trial strategy was deficient. "[T]he
defendant must overcome the presumption that, under the circumstances, the challenged action
'might be considered sound trial strategy.'"[64] "[He] bears the heavy burden of proving that
counsel's assistance was neither reasonable nor the result of sound trial strategy."[65] "In
determining whether the defendant received effective assistance of counsel, 'we will neither
second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but
rather, will defer to counsel's sound trial strategy."[66] "Because advocacy is an art and not a
science, and because the adversary system requires deference to counsel's informed decisions,

---

[60] *Id.* at 786.

[61] *Morrison*, 477 U.S. at 382.

[62] *Richter*, 131 S.Ct. at 791 (internal quotation marks and citation omitted).

[63] *Morrison*, 477 U.S. at 382.

[64] *Strickland*, 466 U.S. at 689.

[65] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[66] *Id.* (quoting *Strickland*, 466 U.S. at 689).

strategic choices must be respected in these circumstances if they are based on professional judgment."[67]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[68]  The court must then consider those acts or omissions against "prevailing professional norms."[69]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[70]

Murphy has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  Murphy presented no alternate attorney's determination challenging counsel's decisions in pursuing his defense.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[71]

Based upon the record before it,[72] this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of,

---

[67] *Strickland*, 466 U.S. at 681.

[68] *Id*. at 690.

[69] *Id*.

[70] *Id*.

[71] *Id.* at 688.

[72] This Court notes, that much of the "evidence" Murphy claims his counsel failed to introduce was more likely than not inadmissible under the rules of evidence, e.g., as hearsay.  For example, the police report, Murphy's conversations with Heather Murphy, Donna Ray, Wendy Johnson, and the statements of other witnesses who did not testify.

clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[73]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Murphy's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Murphy has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  Murphy is not entitled to relief under his first ground.

Ground 5:  Cumulative Effect of Trial Errors

Although Murphy's denomination of his fifth ground is a "cumulative effect," it actually only relates to a single aspect of the trial:  the appointment of counsel to represent his wife, Heather Gibson Murphy, and that her election to decline to testify on Fifth Amendment self-incrimination grounds somehow violated his right to due process.  Five days prior to the start of the trial, the trial court determined that counsel needed to be appointed for Murphy's wife and appointed counsel.[74]  Prior to the empaneling of the jury, Murphy's wife was called to the stand by defense counsel and declined to testify on the advice of counsel.[75]  The trial court also

---

[73] 28 U.S.C. § 2254(d).

[74] Clerk's Transcript on Appeal at 71; Reporter's Transcript on Appeal at 13.  Neither party has pointed to anything in the record that reflects the trial court's reason for its determination and this Court's review of the record did not uncover any reasoning for this action.

[75] Reporter's Transcript on Appeal at 18-20.

determined that she was unavailable as a witness.  In rejecting Murphy's claim that this violated

his due process rights, the Sacramento County Superior Court held:

> [Murphy] argues that his due process rights were denied, because his wife,
> who could have provided exonerating testimony, invoked her Fifth Amendment right
> and chose not to testify at his trial.  These allegations do not give rise to a claim for
> violation of due process or any claim that is cognizable on habeas corpus.  [Murphy]
> also argues that the trial court improperly denied his motion for a new trial based on
> his wife's later decision to testify.  This claim was raised and rejected on appeal and
> is barred.  (*In re Walteus, supra*, 62 Cal.2d at 225).[76]

Murphy contends that the trial court's action was arbitrary and capricious essentially

based upon the argument that if it were true that by testifying his wife might be subject to

prosecution the prosecutor would have charged her, which he didn't.  The record, of course, does

not reflect the basis for her counsel's advice—indeed, that information was protected by the

attorney-client privilege.  Murphy has not cited any authority for the proposition that the

appointment of counsel for a potential witness by the court and the subsequent refusal by the

witness to testify on Fifth Amendment self-incrimination grounds constitutes a violation of

constitutional due process.  Nor has independent research by this Court discovered any such

authority.  Having failed to raise an issue of constitutional dimension, Murphy is not entitled to

relief under his Fifth Ground.[77]

Ground 6:  Denial of Motion for a New Trial

As he did in his state habeas petitions, Murphy argues that the trial court erred in denying

his motion for a new trial based upon what contends is "newly discovered evidence of

---

[76] *Murphy*, 2009 WL 1654571 at 5.

[77] *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) (holding that, because a federally issued writ of habeas corpus can only reach convictions obtained in violation of the United States Constitution, they may only be issued to correct wrongs of constitutional dimension).

prosecutorial misconduct, including: 1) defense tampering; 2) witness intimidation; and 3) a

*Brady* discovery for exculpatory evidence."[78]  On direct appeal, Murphy limited his argument to

the fact that Heather had subsequently changed her mind and wanted to testify at trial.  The

California Court of Appeal rejected Murphy's argument that he was entitled to a new trial:

> [*Murphy's*] Motion for a New Trial
>
> At trial, [Murphy's] wife, Heather, invoked her Fifth Amendment right to remain silent.  Nevertheless, in support of his motion for a new trial, [Murphy] submitted a declaration from Heather, wherein she indicated she had changed her mind.  Heather claimed that approximately 12 minutes after invoking her right to remain silent, she changed her mind and wanted to testify, but her efforts to so inform the court were thwarted by her counsel, defense counsel, and court staff.  She said she was not allowed back into the courtroom, her attorney would not return her phone calls, and when she tried to call defense counsel, he hung up on her.
>
> Heather also averred that, had she been able to testify, she would have told the jury that Ross was attempting to rape her when [Murphy] broke into Ross's apartment.  [Murphy] argued that this new evidence "would provide a lawful basis for [[his]] actions and . . . would draw into question the credibility of the alleged victim."
>
> *The Hearing on* [*Murphy's*] *Motion*
>
> The court reappointed Robert Matheu to represent Heather at the hearing on [Murphy's] motion.  After reading Heather's declaration, however, Matheu informed the court that he had a possible conflict because his recollection of events was different than Heather's.  The court relieved Matheu of his status as Heather's attorney.  Matheu then testified at the hearing.
>
> Matheu testified that prior to trial, and contrary to Heather's sworn statement, he talked with her on the phone for 20 minutes prior to their first meeting.  On the first day of [Murphy's] trial, he met with Heather for another 30 minutes to discuss the content of her testimony and the possible ramifications of her testifying on [Murphy's] behalf.  As a result of their conversation, he advised her to invoke her Fifth Amendment right against self-incrimination; she took his advice.
>
> Matheu also testified that, contrary to Heather's claim that he failed to return her phone calls, he spoke with her at least twice after she invoked her right against self-incrimination.  On neither occasion did she tell him that she had changed her mind.
>
> In support of [Murphy's] motion, Heather testified that she suffers from bipolar adjustment disorder, post traumatic stress disorder, and hallucinations.  She admitted to being on seven different medications to manage her mental illnesses.  In

---

[78] Petition at 41-43.

addition to the statements made in her written declaration, Heather testified that she did meet with Matheu immediately after invoking her right to remain silent, but he said she was "emotional" and should wait a few days before doing anything.  She also claimed she tried to contact the court directly, but was told to talk to her attorney.

*The Court's Ruling*

After considering the testimony and Heather's declaration, the court denied [Murphy's] motion:  "To say that there are significant differences between the two versions of events does not begin to bring to the fore not only issues of credibility and recollection, but also the Court is cognizant in a proceeding such as this where I'm the finder of fact, that I am also to consider the factor that a jury would consider in assessing credibility.

"To the extent there are differences in discrepancies between [Heather] and Mr. Matheu, I accept Mr. Matheu's versions of the events. In so doing I make the following findings:

"Number one, Mr. Matheu does not suffer from any kind of a mental disease or disorder that would render his recollection of the events to be called into question.

"Number two:  [Heather] is married to the [d]efendant in this case.  She obviously loves him and is concerned about his well being . . . .

"Number three:  I'm satisfied that based on what Mr. Matheu told us during the course of his testimony a couple days ago, that he had a significant conversation with [Heather] wherein Mr. Matheu testified that she had given him confidential information concerning the facts of the case that lead him to conclude that she should invoke her right under the Fifth Amendment and not testify.

"[¶] . . . . . .

"I was impressed with Mr. Matheu's note-taking and his ability to refresh his recollection.  He did, in fact, notate in his calendar multiple times that he had contact with Mrs. Murphy.  The fact that he had phoned her back, which is, by the way, in direct contravention of what she declared under penalty of perjury that she made phone calls to Mr. Matheu that went unreturned.

"That in and of itself to me is a significant discrepancy between the person who has an absolute bias, interest and motive to testify and state facts under penalty of perjury one way, and a person who has not invested in a case and has not anything other than his reputation that's at stake, which obviously Mr. Matheu has in this matter.

"[¶] . . . . . . .

"In addition, [Heather] I think was impeached in a significant way by Mr. Matheu's testimony with respect to what she wanted to do in this matter, that is after jury selection.  I think there's significant impeachment between the two versions . . . .

"[¶] . . . . . . .

"And I do believe that [Heather] has a huge incentive at this point in time to come to this [c]ourt now and indicate what she would have testified to.  And on that front as well, the record should reflect that the jury was instructed with respect to the credibility of witnesses.

26

"They would have taken into consideration not only [Heather's] mental state, medications she was on, but also her close personal relationship with [[Murphy]] in deciding whether or not she was ultimately a credible witness.  I have done that in this proceeding, and I find her not to be credible on any level.

"So the ruling of this Court is to deny the motion for new trial based on the newly discovered evidence."

## DISCUSSION

[Murphy] contends the trial court erred in denying his motion for a new trial because the testimony of his wife was newly discovered evidence that made a different result probable on retrial.  The People respond that the quality of [Murphy's] newly discovered evidence did not make a different result probable on retrial.  We agree with the People.

"'"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."'  [Citations.]  '"[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background."'  [Citation.]

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors:  '"1. That the evidence, and not merely its materiality, be newly discovered; 2.  That the evidence be not cumulative merely; 3.  That it be such as to render a different result probable on a retrial of the cause; 4.  That the party could not with reasonable diligence have discovered and produced it at the trial; and 5.  That these facts be shown by the best evidence of which the case admits."'"  (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Here, [Murphy's] motion was based on his wife's declaration that the victim was raping her when [Murphy] burst into the victim's apartment.  According to [Murphy], this testimony warrants a new trial because it contradicts the victim's testimony, "the strongest (and only evidence) introduced against [[Murphy]]."  We disagree.

Heather's declaration was discredited almost in its entirety by her former attorney.  Additionally, as noted by the court, Heather, who suffers from numerous mental illnesses, had every reason to lie; her husband was sentenced to 24 years in prison.  The court's finding that Heather was "not . . . credible on any level," is amply supported by the record.

Because [Murphy's] only new evidence was the unreliable testimony of his wife, it is improbable that a different result would have occurred on retrial.  Accordingly, the trial court's denial of [Murphy's] motion for a new trial was not an abuse of discretion.[79]

---

[79] *Murphy*, 2009 WL 1654571 at 2-4.

Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[80] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[81]

Murphy's contentions of prosecutorial misconduct, i.e., witness tampering and intimidation by threats of prosecution, are simply unsupport by any facts in the record.  As for Murphy's argument *vis-a-vis* the weight and importance of the testimony of his wife, as both the Sacramento County Superior Court and the California Court of Appeal found, she simply was not a credible witness.  In a federal habeas proceeding, this Court must defer to the credibility determinations of the state courts.[82]  Murphy's allusion to *Brady* is likewise without merit. *Brady*,[83] and its progeny, require the Government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching."[84]  The testimony of Murphy's wife does not fall within this category.  Murphy is not entitled to relief under his sixth ground.

---

[80] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[81] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1).").

[82] *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986) ("We can think of no sort of factual finding that is more appropriate for deferential treatment than is a state court's credibility determination.").

[83] *Brady v. Maryland*, 373 U.S. 83 (1962).

[84] *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

## V.  CONCLUSION AND ORDER

Murphy is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Murphy's request for an evidentiary hearing is

**DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[85]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[86]

The Clerk of the Court is to enter judgment accordingly.

Dated: October 11, 2012.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[85] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[86] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.